*37]                          *The ELIZA.

BAS, Plaintiff in error, *v.* TINGY, Defendant in error.

*State of war.—Salvage.*

Every contention, by force, between two nations, in external matters, under authority of their respective governments, is a *public* war.

If a general war be declared, its extent and operations are only restricted and regulated by the *jus belli*, forming part of the law of nations; but if a *partial* war be waged, its extent and operation depend on our municipal laws. CHASE, J.

A belligerent power has a right, by the laws of nations, to search a neutral vessel; and upon suspicion of a violation of her neutral obligations, to seize and carry her into port for further examination. Ibid.

An American vessel, captured by a French privateer, on the 31st March 1799, and recaptured by a public armed American ship, on the 21st of April 1799, was condemned to pay salvage, under the act of congress of the 2d March 1799.

IN error from the Circuit Court for the district of Pennsylvania. On the return of the record, it appeared by a case stated, that the defendant in error had filed a libel in the district court, as commander of the public armed ship, the Ganges, for himself and others, against the ship Eliza, John Bas, master, her cargo, &c., in which he set forth that the said ship and cargo belonged to citizens of the United States; that they were taken on the high seas, by a French privateer, on the 31st of March 1799; and that they were retaken by the libellant, on the 21st of April following, after having been above ninety-six hours in possession of the captors. The libel prayed

---

for salvage, conformable to the acts of congress ; and the facts being admitted by the answer of the respondents, the district court decreed to the libellants one-half of the whole value of ship and cargo.    This decree was affirmed in the circuit court, without argument, and by consent of the parties, in order to expedite a final decision on the present writ of error.

The controversy involved a consideration of the following sections in two acts of congress: By an act of the 28th of June 1798 (1 U. S. Stat. 574, § 2), it is declared, "That whenever any vessel the property of, or employed by, any citizen of the United States, or person resident therein, or any goods or effects belonging to any such citizen or resident, shall be recaptured by any public armed vessel of the United States, the same shall be restored to the former owner or owners, upon due proof, he or they paying and allowing, as and for salvage to the recaptors, one-eighth part of the value of such vessel, goods and effects, free from all deduction and expenses."

By an act of the 2d of March 1799 (1 U. S. Stat. 716), it is declared, " That for the ships or goods belonging to the citizens of the United States, or to the citizens or subjects of any nation in amity with the United States, if retaken from the enemy within twenty-four hours, the owners are to allow one-eighth part of the whole value for salvage, &c.; and if above ninety-six hours, one-half, all of which is to be paid, without any deduction whatsoever, &c.    And by the 9th section of the same act, it is declared, " That all the money accruing, or which has already accrued from the sale of prizes, shall be and remain for ever a fund for the payment of the half-pay to the officers and seamen, who may be entitled to receive the same."

The case was argued by *Lewis* and *E. Tilghman*, for the plaintiff in error, and by *Rawle* and *W. Tilghman*, for the defendant ; and the argument turned principally upon two inquiries :   1st. Whether the act of March 1799, applied only to the event of a future general war ?    2d. Whether France was an enemy of the United States, within the meaning of the law ?

*For the *plaintiff* in error, it was urged, that the acts, passed in    [*38 immediate relation to France, were of a restricted temporary nature; but that the act of March 1799, established a permanent system for the government of the navy ; and the designation of " the enemy " in that act, applies only to future hostilities, in case of a declared war.    That on the just principles of government, every citizen has a right to the public protection ; and therefore, no salvage ought, in strictness, to be allowed for the recapture of the property of a citizen by a public ship of war.    Vatt. lib. 2, c. 6, § 71.    And congress has manifested, in some degree, their sense on the subject, by making the salvage in that case less than in the case of recapture by a private armed vessel.    That the word " enemy " must be construed according to its legal import (1 Str. 278); and that, according to legal interpretation, the differences between the United States and France do not constitute war, nor render the citizens of France enemies of the United States. Vatt. lib. 3, § 69, 70 ; 1 Black. Com. 257 ; 2 Ibid. 259 ; 2 Burl. 258, § 31 ; 261, § 39 ; 262.    That a subsequent law does not abrogate a prior law, unless it contains contradictory matter ; and where there are no negative or repealing, words, both must be so construed as to stand together.   11 Co. 61, 63 ; Show. 439 ; 10 Mod. 118 ; 6 Co. 19 *b*.    That the act of March 1799,

The Eliza.

contains no repealing or negative words ; and may be applied, consistently, to the case of a future public war, leaving the qualified state of hostility with France, for the operation of the preceding law.

For the *defendant* in error, it was contended, that the relative situation of the United States and France, is that of " a qualified maritime war ; " on the part of the French, aggressive ; on our part, defensive ; proceeding from a legitimate expression of the public will, through its constitutional organ, the congress, manifested by public declarations and open acts. That from such a state, the character of enemy necessarily arises ; and that the designation being so understood by congress, was intended to be applied, and was actually applied, to France. That the act of March 1799 speaks of prizes, which could only be such as had been captured from France ; and that taking the word prize, according to its legal signification, it means a capture, or acquisition by right of war, in a state of war. 3 Bl. Com. 69, 108 ; 2 Wood. 441 ; Doug. 585, 591 ; Rob. Adm. 283. That if a prize means a capture in war, it follows, of course, that it means a capture from an enemy ; for war can only be waged against enemies. That war may exist, without a declaration ; a defensive war requires no declaration ; and an imperfect or qualified public war, is still distinct from the case of letters of marque and reprisal, for the redress of a private wrong, by the employment of a private force. 1 Ruth. lib. 1, c. 19, § 1, p. 470-1 ; 2 Ibid. 497-8, 503, 507, 511 ; Burl. 196, 189 ; Vatt. 475 ; 2 Burl. 204, § 7 ; Lee on Capt. 13-39 ; Puff. 843 ; Grot. lib. 3, c. 3, § 6 ; Molloy 46. That congress, *by repealing the regulations respecting salvage, contained in the act \*39] of March 1798, has virtually declared, that those regulations were in force, in relation to France ; and that the provisions in the act of March 1799, being inconsistent with the provision in the act of June 1798, the elder law is so far repealed. (a)

The judges delivered their opinions *seriatim* in the following manner :

MOORE, Justice.—This case depends on the construction of the act for the regulation of the navy. It is objected, indeed, that the act applies only to future wars ; but its provisions are obviously applicable to the present situation of things, and there is nothing to prevent an immediate commencement of its operation.

It is, however, more particularly urged, that the word " enemy " cannot be applied to the French ; because the section in which it is used, is confined to such a state of war, as would authorize a recapture of property belonging to a nation in amity with the United States, and such a state of war, it is said, does not exist between America and France. A number of books have been cited to furnish a glossary on the word enemy ; yet, our situation is so extraordinary, that I doubt whether a parallel case can be traced in the history of nations. But if words are the representatives of ideas, let me ask, by what other word, the idea of the relative situation of America and France could be communicated, than by that of hostility or war ? And how can the characters of the parties engaged in hostility or war, be otherwise

---

(a) All the acts of congress, passed in relation to France, were cited and discussed by both sides, in the course of the argument; but it is thought unnecessary to refer to them more particularly in this report.

described, than by the denomination of enemies? It is for the honor and dignity of both nations, therefore, that they should be called enemies; for it is by that description alone, that either could justify or excuse the scene of bloodshed, depredation and confiscation, which has unhappily occurred; and surely, congress could only employ the language of the act of June 13, 1798, towards a nation whom she considered as an enemy.

Nor does it follow, that the act of March 1799, is to have no operation, because all the cases in which it might operate, are not in existence at the time of passing it. During the present hostilities, it affects the case of re-captured property belonging to our own citizens, and in the event of a future war, it might also be applied to the case of recaptured property belonging to a nation in amity with the United States. But it is further to be re-marked, that all the expressions of the act may be satisfied, even at this very time: for by former laws, the recapture of property, belonging to persons resident within the United States, is authorized; those residents may be aliens; and if they are subjects of a nation in amity with the United States, they answer completely the description of the law.

*The only remaining objection, offered on behalf of the plaintiff in error, supposes, that, because there are no repealing or negative [*40 words, the last law must be confined to future cases, in order to have a sub-ject for the first law to regulate. But if two laws are inconsistent (as, in my judgment, the laws in question are), the latter is a virtual repeal of the former, without any express declaration on the subject.

On these grounds, I am clearly of opinion, that the decree of the circuit court ought to be affirmed.

WASHINGTON, Justice.—It is admitted, on all hands, that the defendant in error is entitled to some compensation: but the plaintiff in error con-tends, that the compensation should be regulated by the act of the 28th June 1798 (1 U. S. Stat. 574, § 2), which allows only one-eighth for salvage; while the defendant in error refers his claim to the act of the 2d March (Ibid. 716, § 7), which makes an allowance of one-half, upon a recapture from the enemy, after an adverse possession of ninety-six hours. If the defendant's claim is well founded, it follows, that the latter law must virtu-ally have worked a repeal of the former; but this has been denied, for a variety of reasons:

1st. Because the former law relates to recaptures from the French, and the latter law relates to recaptures from the enemy; and it is said, that "the enemy" is not descriptive of France or of her armed vessels, according to the correct and technical understanding of the word.

The decision of this question must depend upon another; which is, whether, at the time of passing the act of congress of the 2d of March 1799, there subsisted a state of war between the two nations? It may, I believe, be safely laid down, that every contention by force, between two nations, in external matters, under the authority of their respective governments, is not only war, but public war. If it be declared in form, it is called solemn, and is of the perfect kind; because one whole nation is at war with another whole nation; and all the members of the nation declaring war are author-ized to commit hostilities against all the members of the other, in every place and under every circumstance. In such a war, all the members act under a

general authority, and all the rights and consequences of war attach to their condition.

But hostilities may subsist between two nations, more confined in its nature and extent ; being limited as to places, persons and things ; and this is more properly termed imperfect war ; because not solemn, and because those who are authorized to commit hostilities act under special authority, and can go no further than to the extent of their commission. Still, however, it is public war, because it is an external contention by force, between some of the members of the two nations, authorized by the legitimate powers. *41] It is a war between the two nations, though all the *members are not authorized to commit hostilities, such as in a solemn war, where the government restrain the general power.

Now, if this be the true definition of war, let us see, what was the situation of the United States in relation to France. In March 1799, congress had raised an army ; stopped all intercourse with France ; dissolved our treaty ; built and equipped ships of war ; and commissioned private armed ship ; enjoining the former, and authorizing the latter, to defend themselves against the armed ships of France, to attack them on the high seas, to subdue and take them as prize, and to recapture armed vessels found in their possession. Here, then, let me ask, what were the technical characters of an American and French armed vessel, combating on the high seas, with a view, the one to subdue the other, and to make prize of his property? They certainly were not friends, because there was a contention by force ; nor were they private enemies, because the contention was external, and authorized by the legitimate authority of the two governments. If they were not our enemies, I know not what constitutes an enemy.

2d. But secondly, it is said, that a war of the imperfect kind, is more properly called acts of hostility or reprisal, and that congress did not mean to consider the hostility subsisting between France and the United States, as constituting a state of war. In support of this position, it has been observed, that in no law, prior to March 1799, is France styled our enemy, nor are we said to be at war. This is true ; but neither of these things were necessary to be done : because, as to France, she was sufficiently described by the title of the French republic ; and as to America, the degree of hostility meant to be carried on, was sufficiently described, without declaring war, or declaring that we were at war. Such a declaration by congress, might have constituted a perfect state of war, which was not intended by the government.

3d. It has likewise been said, that the 7th section of the act of March 1799, embraces cases which, according to pre-existing laws, could not then take place, because no authority had been given to recapture friendly vessels from the French ; and this argument was strongly and forcibly pressed. But because every case provided for by this law was not then existing, it does not follow, that the law should not operate upon such as did exist, and upon the rest, whenever they should arise. It is a permanent law, embracing a variety of subjects, not made in relation to the present war with France only, but in relation to any future war with her, or with any other nation. It might then very properly allow salvage for recapturing of American vessels from France, which had previously been authorized by law, though it could not immediately apply to the vessels of friends : and

whenever such a war should exist between the United States and France, or any other nation, as, according to the law of nations, *or special authority, would justify the recapture of friendly vessels, it might, on [*42 that event, with similar propriety, apply to them, which furnishes, I think, the true construction of the act. The opinion which I delivered at New York, in *Talbot* v. *Seeman*, was, that although an American vessel could not justify the retaking of a neutral vessel from the French, because neither the sort of war that subsisted, nor the special commission under which the American acted, authorized the proceeding; yet, that the 7th section of the act of 1799, applied to recaptures from France, as an enemy, in all cases authorized by congress. And on both points, my opinion remains unshaken; or rather has been confirmed by the very able discussion which the subject has lately undergone in this court, on the appeal from my decree.

Another reason has been assigned by the defendant's counsel, why the former law is not to be regarded as repealed by the latter, to wit, that a subsequent affirmative general law cannot repeal a former affirmative special law, if both may stand together. This ground is not taken, because such an effect involves an indecent censure upon the legislature for passing contradictory laws, since the censure only applies where the contradiction appears in the same law; and it does not follow, that a provision which is proper at one time, may not be improper at another, when circumstances are changed: but the ground of argument is, that a change ought not to be presumed. Yet, if there is sufficient evidence of such a change in the legislative will, and the two laws are in collision, we are forced to presume it. What, then, is the evidence of legislative will? In fact and in law, we are at war: an American vessel, fighting with a French vessel, to subdue and make her prize, is fighting with an enemy, accurately and technically speaking: and if this be not sufficient evidence of the legislative mind, it is explained in the same law. The sixth and the ninth sections of the act speak of prizes, which can only be of property taken at sea from an enemy, *jure belli;* and the ninth section speaks of prizes as taken from an enemy, in so many words, alluding to prizes which had been previously taken; but no prize could have been then taken except from France: prizes taken from France were, therefore, taken from the enemy. This, then, is a legislative interpretation of the word enemy; and if the enemy, as to prizes, surely they preserve the same character as to recaptures,

Besides, it may be fairly asked, why should the rate of salvage be different in such a war as the present, from the salvage in a war more solemn or general? And it must be recollected, that the occasion of making the law of March 1799, was not only to raise the salvage, but to apportion it to the hazard in which the property retaken was placed; a circumstance for which the former salvage law had not provided. The two laws, upon the whole, cannot be rendered consistent, unless the court could wink so hard as not to see and know, that *in fact, in the view of congress, and to every [*43 intent and purpose, the possession by a French armed vessel of an American vessel, was the possession of an enemy: and therefore, in my opinion, the decree of the circuit court ought to be affirmed.

CHASE, Justice.—The judges agreeing unanimously in their opinion, I presumed, that the sense of the court would have been delivered by the

The Eliza.

president, and therefore, I have not prepared a formal argument on the occasion. I find no difficulty, however, in assigning the general reasons which induce me to concur in affirming the decree of the circuit court.

An American public vessel of war recaptures an American merchant vessel from a French privateer, after ninety-six hours possession, and the question is stated, what salvage ought to be allowed? There are two laws on the subject: by the first of which, only one-eighth of the value of the recaptured property is allowed; but by the second, the recaptor is entitled to a moiety. The recapture happened after the passing of the latter law; and the whole controversy turns on the single question, whether France was, at that time, an enemy? If France was an enemy, then the law obliges us to decree one-half of the value of the ship and cargo for salvage: but if France was not an enemy, then no more than one-eighth can be allowed.

The decree of the circuit court (in which I presided) passed by consent; but although I never gave an opinion, I have never entertained a doubt on the subject. Congress is empowered to declare a general war, or congress may wage a limited war; limited in place, in objects, and in time. If a general war is declared, its extent and operations are only restricted and regulated by the *jus belli*, forming a part of the law of nations; but if a partial law is waged, its extent and operation depend on our municipal laws.

What, then, is the nature of the contest subsisting between America and France? In my judgment, it is a limited, partial war. Congress has not declared war, in general terms; but congress has authorized hostilities on the high seas, by certain persons, in certain cases. There is no authority given to commit hostilities on land; to capture unarmed French vessels, nor even to capture French armed vessels, lying in a French port; and the authority is not given indiscriminately to every citizen of America, against every citizen of France, but only to citizens appointed by commissions, or exposed to immediate outrage and violence. So far it is, unquestionably, a partial war; but, nevertheless, it is a public war, on account of the public authority from which it emanates.

There are four acts, authorized by our government, that are demonstrative of a state of war. A belligerent power has a right, by the law of *44] nations, to search a neutral vessel; and upon *suspicion of a violation of her neutral obligations, to seize and carry her into port for further examination. But by the acts of congress, an American vessel is authorized: 1st. To resist the search of a French public vessel: 2d. To capture any vessel that should attempt, by force, to compel submission to a search: 3d. To recapture any American vessel, seized by a French vessel: and 4th. To capture any French armed vessel, wherever found, on the high seas. This suspension of the law of nations, this right of capture and recapture, can only be authorized by an act of the government, which is, in itself, an act of hostility. But still, it is a restrained or limited hostility; and there are, undoubtedly, many rights attached to a general war, which do not attach to this modification of the powers of defence and aggression. Hence, whether such shall be the denomination of the relative situation of America and France, has occasioned great controversy at the bar; and it appears, that Sir WILLIAM SCOTT also was embarrassed in describing it, when he observed, "that in the present state of hostility (if so it may be called) between America and France," it is the practice of the English court of admiralty, to

The Eliza.

restore recaptured American property, on payment of a salvage. (*The Santa Cruz*, 1 Rob. 54.) But, for my part, I cannot perceive the difficulty of the case. As there may be a public general war, and a public qualified war ; so there may, upon correspondent principles, be a general enemy, and a partial enemy. The designation of "enemy" extends to a case ᵕf perfect war ; but as a general designation, it surely includes the less, as well as the greater, species of warfare. If congress had chosen to declare a general war, France would have been a general enemy ; having chosen to wage a partial war, France was, at the time of the capture, only a partial enemy ; but still she was an enemy.

.   It has been urged, however, that congress did not intend the provisions of the act of March 1799, for the case of our subsisting qualified hostility with France, but for the case of a future state of a general war with any nation : I think, however, that the contrary appears from the terms of the law itself, and from the subsequent repeal. In the 9th section, it is said, that all the money accruing, " or which has already accrued from the sale of prizes," shall constitute a fund for the half-pay of officers and seamen. Now, at the time of making this appropriation, no prizes (which *ex vi termini* implies a capture in a state of war) had been taken from any nation but France, those which had been taken, were not taken from France as a friend ; they must, consequently, have been taken from her as an enemy ; and the retrospective provision of the law can only operate on such prizes. Besides, when the 13th section regulates " the bounty given by the United States on any national ship of war, taken from the enemy, and brought into port," it is obvious, that even if the bounty has no relation to previous captures, it must operate from the moment of passing the \*act, and ⌈\*45 embraces the case of a national ship of war, taken from France as an enemy, according to the existing qualified state of hostilities. But the repealing act, passed on the 3d of March 1800 (subsequent to the recapture in the present case) ought to silence all doubt as to the intention of the legislature ; for, if the act of March 1799 did not apply to the French republic, as an enemy, there could be no reason for altering or repealing that part of it, which regulates the rate of salvage on recaptures.

The acts of congress have been analyzed, to show, that a war is not openly denounced against France, and that France is nowhere expressly called the enemy of America : but this only proves the circumspection and prudence of the legislature. Considering our national prepossessions in favor of the French republic, congress had an arduous task to perform, even in preparing for necessary defence and just retaliation. As the temper of the people rose, however, in resentment of accumulated wrongs, the lan guage and the measures of the government became more and more energetic and indignant ; though hitherto the popular feeling may not have been ripe for a solemn declaration of war ; and an active and powerful opposition in our public councils, has postponed, if not prevented, that decisive event, which many thought would have best suited the interest, as well as the honor, of the United States. The progress of our contest with France, indeed, resembles much the progress of our revolutionary contest ; in which, watching the current of public sentiment, the patriots of that day proceeded, step by step, from the supplicatory language of petitions for a redress of grievances, to the bold and noble declaration of national inde

The Eliza.

pendençe.   Having, then, no hesitation in pronouncing that a partial war exists between America and France, and that France was an enemy, within the meaning of the act of March 1799, my voice must be given for affirming the decree of the circuit court.

PATERSON, Justice.—As the case appears on the record, and has been accurately stated by the counsel, and by the judges who have delivered their opinions, it is not necessary to recapitulate the facts.   My opinion shall be expressed in a few words.   The United States and the French republic are in a qualified state of hostility.   An imperfect war, or a war, as to certain objects, and to a certain extent, exists between the two nations ; and this modified warfare is authorized by the constitutional authority of our country. It is war *quoad hoc*.   As far as congress tolerated and authorized the war on our part, so far may we proceed in hostile operations.   It is a maritime war, a war at sea, as to certain purposes.   The national armed vessels of France attack and capture the national armed vessels of the United States; and the national armed vessels of the United States are expressly authorized *46] and directed to attack, subdue and take the national armed vessels *of France, and also to recapture American vessels.   It is, therefore, a public war between the two nations, qualified on our part, in the manner prescribed by the constitutional organ of our country.   In such a state of things, it is scarcely necessary to add, that the term " enemy," applies; it is the appropriate expression, to be limited in its signification, import and use, by the qualified nature and operation of the war on our part.   The word enemy proceeds the full length of the war, and no further.   Besides, the intention of the legislature as to the meaning of this word, enemy, is clearly deducible from the act for the government of the navy, passed the 2d of March 1799.   This act embraces the past, present and future, and contains passages which point the character of enemy at the French, in the most clear and irresistible manner.   I shall select one paragraph, namely, that which refers to prizes taken by our public vessels, anterior to the passing of the latter act.   The word prizes in this section can apply to the French, and the French only.   This is decisive on the subject of legislative intention.

BY THE COURT.—Let the decree of the circuit court be affirmed.